May it please the Court, good morning. My name is Matt Kinney and I represent the appellants Earth Island Institute and Sequoia Forest Keeper. I'd like to reserve three minutes for rebuttal. This appeal presents the question of whether the U.S. Forest Service may avoid the acreage limitations of its commercial timber sale rules under the National Environmental Policy Act by relying on a categorical exclusion for road maintenance activities like pruning vegetation where hazard trees are being cut. Well the problem here is that the wildfire burned vegetation on both sides of the road, did it not? Yes, Your Honor. Okay, so why isn't this just part of road maintenance activities in order to remove danger trees from a 300-foot radius? Because it involves a commercial timber sale and if you look at the Forest Service... So what? I mean there may very well be salvageable burned trees that the Forest Service can make some money off of that are harvested, but isn't it isn't the primary purpose here to protect the public traveling on the road from damaged trees that may fall across the road in the wind and so on? Well I think the important point there is it's not the purpose for which the project is intended but its impacts and the categorical exclusion rules. 29,000 acre wildfire burn area here, I don't understand. This is not a normal timber sale where the Forest Service picks several thousand acres and said okay we're gonna we're gonna put this timber up for sale. The problem is that you've got all this burned wood still standing on both sides of the road that presents a danger to the traveling public. Well it wasn't an immediate danger, you know, the agency took a year to develop this and then a year to carry it out and certainly if there are trees hanging over the edge of the road the Forest Service may and probably did cut them quickly under category 4 for road maintenance or whatever it is, but the problem is when it plans a timber sale there is a categorical exclusion specifically for hazardous... Is your argument that if it if it stood for a year it's not really a danger? That's not your argument is it? No not that it's not a danger but not that it's it's not a particular hurry they have plenty of time. There's no doubt that the agency has the discretion to carry out a timber sale of salvaged timber but when it is not an emergency as it isn't in this case it has the time to develop an environmental assessment. The Forest Service made a determination that these trees posed a hazard to the traveling public and and the analysis basically was if we don't conduct this maintenance activity we're going to have to close the roads. Now you may not think that's an emergency but I mean the Forest Service gave a pretty reasonable explanation for what they were trying to do here along what 50.2 miles of forest roads? That's certainly fine that they carry it out but it just has to be done with an environmental assessment which can be carried out normally is in a couple of months just as quickly as the categorical exclusion. The problem is without an environmental assessment you don't have any range of alternatives so for instance Earth Island was urging the Forest Service to leave more logs on the ground because they're needed for wildlife purposes. That would have been an alternative they could have looked at. Most of the wildlife particularly the threatened or endangered species had essentially been burned out of this area and with I think the exception of one den for a fisher that was somewhere along the route it wasn't really suitable at this point for wildlife habitability was it? Well but they come back and that's a question for the agency to examine more fully in an environmental analysis. You know that the comments by Earth Island were that that it's not the case and that the wildlife come back to an area if it's not if you don't take out all the logs. So is your concern here that had the acreage been restricted to less than 250 acres the Forest Service could have done whatever it wanted in terms of road maintenance and removal of danger trees? Well if it was under 250 acres they could have claimed the exemption from an environmental analysis. Your answer is yes that it wouldn't have required an environmental impact statement that the categorical exclusion would apply. That's right under E13 but D4 is not ever to be used for a commercial timber sale. If you look at their rules. You keep saying commercial timber sale and I think the Forest Service is trying to draw a distinction between the sale of maintenance activities and the removal of danger trees. And I don't know of anything in the multi-use Forest Act that prevents the Forest Service from making multiple use of what is otherwise lost timber. No they can certainly make multiple use it's the matter of what level of NEPA compliance they have to do. If you look at the. But is your position that every time the Forest Service sells a tree an environmental impact statement is required? Every time a commercial timber sale of over 250 acres at least an environmental assessment not an EIS that's a much bigger. Even if it's been destroyed in a in a wildland forest fire and the Forest Service is trying to protect the traveling public from harm? Yes its rules in E13 is specifically for harvest of trees damaged by wind ice and moot. Given that the bull run project now is completely done. You don't seem to argue that there's any relief we could give you on the bull run project. But are looking only at the capable of repetition at evading review exception. And yet the government argues that in this very case there are cases that are the same issue and since air stayed a decision could be made on whether this E4 is applicable. So doesn't that just strip us of jurisdiction to consider your issue? No your honor the two cases are before the same judge judge O'Neill and so for one thing there would be no reason to believe that he would rule any differently without intervention by this court. And two while the cases are stayed that doesn't really matter how he'll rule. I guess if the injunction is in place then you can appeal and there would be relief that the appellate court could give. At this point I guess I'm not seeing what relief we could provide and why it's a decision on this issue shouldn't wait for a case where the panel could provide relief. So help me understand that. The two other cases the logins not stay there's no injunction in place and one of them has that we've mentioned has moved forward another one I think is still pending. But so if those cases move forward assuming judge O'Neill would rule the same as he did in this case that the Forest Service is allowed to rely on its. Did you seek an injunction of the the project or the activity on the ground? In the other district court ruled against you you sought an injunction of the activity and the court ruled against you you just haven't asked to stay at the activity. Because it's the exact same question that's presented in this case and so and for the very same question. So so so your view is we should answer this question abstractly even though there's no relief we can give. Declaratory relief like in any case involving capable of repetition there's no relief that a court can grant. So we've said however that where it's possible to get a stay of the activity on the ground the the party has to do that otherwise it's moot and the capable of repetition exception doesn't apply. So we've said that in multiple different cases I guess. Are you talking about in the case before the court or in the the other cases that may repeat? We're talking about the bunker limited partnership versus the United States where it says where your own failure to seek or obtain a stay has prevented the court from reviewing the trial courts decision that we should not apply an exception to the mootness doctrine. Well this and when you didn't seek you didn't appeal the denial of the preliminary injunction you didn't seek to say pending appeal therefore it seems to me given and I'm just thinking what Judge Shikuda is trying to ask you but that's where I came to that bunker limited would say I shouldn't even get into this case. If you'd have done something to help yourself maybe I'd say it has something to do with capable of repetition but since you didn't I don't know why I'm using the court's power to help you. Well I know in the Alcoa versus Bonneville case this court stated that a party need not seek a stay pending appeal. That was a real different case like like the other one you rely on Alaska Center where a contract or a permit expires of by its own terms there's nothing to enjoin because you can't enjoin a permit or a contract from expiring but we don't apply those rules when there's there is some conduct that could be stayed so there would be a possibility for meaningful relief. I think it's the same thing because here you have a permit to conduct a commercial timber sale to a timber contractor and in those other cases it's a permit to carry out some other activity but I think that it seems like the contract in the case of Alcoa it was a contract for sale of power at a certain rate for a certain period of time there's nothing to stay whereas you certainly can stay the bull run project which is removing timber and selling it. Well the Alaska Center case was involved a helicopter outfitter permit that's a permit that expired by its term so a license had been given and it simply expired and the question was could you enjoin the license from expiring and the it's more like a pregnancy case you can't stay a person from having a baby so that's why they use that exception for capable of repetition and evading review but here it is clear that it falls within the headwaters in American horse case where there's actual conduct being undertaken by an agency that could be that could be stayed and then it wouldn't happen so assuming that those cases are more on point why wouldn't this case be moot? Well I I still think it fits within the bounds of Alaska Center the plaintiff could have sought a stay of that helicopter permit and join the helicopter permit. How do you enjoin a permit? You say the the permits void you may no longer do helicopter trips and that would have alleviated the harm of the plaintiffs which was incursions of helicopters into their wilderness experience so I think it's the same and I would say forcing parties to file emergency motions because it's not you're not seeking a stay or you're denied a permit even though it's referred to sometimes it's you have to seek an emergency motion for injunction pending appeal and there's all sorts of language how that's an extraordinary remedy and it has to be decided quickly and so you're forcing panels to decide these large issues in the context of this doesn't seem like that is the way for an orderly proceeding of federal questions to get decided. I see I only have three minutes left I would reserve it for the bottle. Good morning may it please the court my name is Jeff Bielert I'm here from the Department of Justice on behalf of the Forest Service I'm joined today by and allow them four minutes for argument I will thank you your honor and Sierra Forest Produce was the contractor that's correct your honor and their intervener in this case yes and in the district court so you're absolutely right this case is moot the project itself the the only component of this project that Earth Island is challenging is the timber sale so there are other aspects of this project so the bull run project encompasses both the removal of trees and there are some reforestation activities that are ongoing and will continue so Judge Okuda you mentioned you know the project itself is complete actually no that's not quite accurate the component of the project that they challenged the one thing they're challenging this appeal they've narrowed it down to this timber sale that was completed in in December of 2015 and excuse me 2018 so after the completion of that timber sale all the trees have been removed under that timber sale Earth Island is not challenging the removal of trees or the reforestation activities or anything else they're only challenging that timber sale and the Forest Service in this case there are and I mentioned this under the capable of repetition not evading review there are two other projects the the peer fire project the the sale the contract has not even been awarded so it is the same parties it's before the same district court judge the peer fire project is also proceeding under the same categorical exclusion this is that subsection d4 but but nothing yet has occurred so our argument here is even if you get to the point where you say is this capable of repetition not evading review we know it's capable of being repeated because it is being repeated and it's not necessarily evading review because in that case nothing yet has occurred so absolutely Earth Island can seek an injunction as they did in this case and if they need to seek an injunction for the appellate proceedings they're more than able to do so has logging commenced on pure fire no logging on pure fire has not Spear Creek is the other project that we mentioned and Spear Creek I believe there is ongoing tree removal that's under that project and again as you just heard them admit they did not seek an injunction to stop that from occurring so Alcoa and Alaska Center that we've we've said that at requirement to seek an injunction under certain circumstances and they argue that particularly Alaska Center is applicable here yeah and I disagree with that your honor for the reasons that the panel just dimensioned I mean it is a unique circumstances analysis so you have to look at what are the unique circumstances of each one of these cases and in this case the alleged harm what they are alleging is that the removal of trees is somehow harming them that this really make much sense because if you look at their brief they're saying we're okay with the removal of trees we just don't want you to haul them out well so what's the injury right I don't understand what they're actually getting across here but my point is if that's what they're worried about if they're worried about trees being removed that are hazardous trees that have the capability of hitting the road they can get an injunction that will enjoin them and what the district court did when they sought in a preliminary injunction one of the things the district court had to consider is irreparable harm and when it looked at reputable harm it looked at the environmental impacts of the activities that were being proposed at that time and on this record we proceeded the Forest Service proceeded under a categorical exclusion there's a there's a provision 40 CFR 15.08.4 that tells you an extraordinary circumstances and it says to the Forest Service if you want to proceed under a categorical exclusion you need to take into account threatened or endangered species and sensitive species the Forest Service looked at this regulation and it complied with it it went to the Fish and Wildlife Service for the mountain yellow-legged frog and it went and looked at the biological assessment the biological evaluation it looked at 13 species for management management indicator species and looked at another six species under the biological evaluation mountain yellow-legged frog no occurrence in this project area spotted owls 82,000 acres of available habitat on this forest this is not the issue is whether the Forest Service appropriately relied on 4d or d4 yes which doesn't obviously apply to this situation and the the other one that they cite seems much closer to to the description of the work that's not applicable because the size of the acreage it's larger this is just a thing that doesn't cause harm and they make a very strong argument that the categorical exemption you relied on doesn't really fit as as compared to the other one I mean if we reach the merits why would we defer to the Forest Services analysis that d4 was better than I guess it's e13 right so d4 what yeah I realize there's a lot of subsections here so to be clear d4 talks about the repair and maintenance of roads and then it has examples and says but are not limited to and then it provides them actually fit what you were doing there right so if you look at this minor much less invasive right so if you look at the decision memo and this is that excerpts record 70 to 82 the the service lays out why it's relying on these particular categorical exclusions and it points to three and I'll just stick to d4 for one moment it's repair and maintenance of roads and so within you look at the handbook the Forest Services handbook and this is the consistent judgment of the Forest Service when it talks about road maintenance the Forest Service handbook and this is that supplemental excerpt of records 301 to 303 you go to the Forest Service handbook and it tells you road maintenance includes the removal of trees and it tells you and specifically cites subsection d4 and it tells the Forest Service managers you can look at subsection d4 apply this categorical exclusion for the removal of trees and that falls within road maintenance why does that make sense roads are a very busy there's 1 million people that that visit this forest every single year there's also not just visitors with kids in minivans but there's fire truck with firefighters there's a whole bunch of people that are using this roads to maintain those roads and judge Talman brought this up if the Forest Service did not go forward with removing these hazardous trees it would have to close over 50 miles of road and the reason it had it would have to close those road is because of the danger that these trees posed and so when it looks at this provision that tells it you can maintain roads by doing a whole bunch of things that are listed in this categorical exclusion in the decision memo itself it says it falls within the scope of this exclusion when in fact the Forest Service handbook tells it that it falls within this exclusion and so there's nothing arbitrary and capricious about the Forest Service's actions and that's what we were doing here before this court what you have is a decision by the Forest Service that is being applied under the APA's deferential standard of review and in Alaska Center this is a case that we've cited we have a deferential standard review is when the regulation is ambiguous if I read this regulation and the natural reading of it is that it isn't ambiguous and it says you didn't do what you should have done then I don't have to give any deference to the Forest Service do it well so let me to there's sort of there's a lot of deference going on here but in making I mean appreciate you want to have deference here no but if I read e13 which is the one I specifically I don't think we need to give you any deference there it seems to me there's a natural reading that indicates what the that the salvage provision should govern and the natural reading would be that you shouldn't do it under that way under e13 right I wouldn't need to give any deference to anybody I just read it and that's what says okay so let me let me quickly do two things one Alaska Center this is a case that we've cited and it says whether a project falls within a particular category exclusion is a factual determination that implicates substantial agency expertise that's the Alaska Center so the application looking at these categorical exclusions I'm not even in the world of Kaiser I'm not our I'm not Seminole Rock I'm talking about Alaska Center and it tells you it's a factual determination in plants implicates substantial agency expertise then you look to McNair you as a this court a panel of this court is not a panel of scientists we are most deferential when you're reviewing scientific judgments and technical analyses by an agency so again there's deference it's owed when we the Forest Service are looking at our own applying our own expertise now you're absolutely right your honor we cite this in the same day that I filed my brief in this case the Solicitor General's filed brief in Kaiser Kaiser as you know the Supreme Court had to look as whether our and Seminole Rock survives a challenge and the court held yes it is not going to overrule those two decisions you're absolutely right that you have to find that the statute is ambiguous you have to find that it's genuine ambiguity if I after having exhausted all traditional true tools of construction to understand the meaning right quoting Kaiser then at that point I don't give any deference to the Forest Service right well you have to go through the process that fight that that Kaiser gets out but yes if you actually found and I to be clear here I'm not relying on deference my first level argument and I cite this in my brief was was that we on the plaintext of this and that looking at our handbook this is the consistent judgment fair and considered judgment of the Forest Service that within d4 that this applies this court had before it previously this is the American Forest Conservation case this was a district court decision that applied this categorical exclusion as it existed in the handbook it applied it in district court to a removal of trees on something like 15,000 acres it came up on appeal and it was affirmed the judgment was that this court affirmed it was an unpublished decision I recognize that but it's an unpublished decision your honor but this court should reach the the same outcome here I ask you to affirm the judgment in favor of the Forest Service and allow the interveners time thank you may please the court Sarah Gafuri on behalf of Sierra Forest Products the purchaser of the Bull Run timber sale with me in the courtroom today is my colleague Lawson fight and Kent do send the president of Sierra Forest Products because the government adequately addressed the newness issue I'm going to focus my argument on the merits the Bull Run timber sale does not authorize the commercial harvest of all dead and dying trees along the 17.9 miles of road instead it only authorizes those dead trees that pose a hazard to the roadway and a hazard to the public because they're within striking distance of the a clear-cut and any undamaged green trees or dead trees that don't pose a hazard they will be left standing it doesn't say it has to be all of them it doesn't say anything about clear-cutting who just said this sort of operation where you're salvaging dead or dying trees we think it has to be 250 acres or less in order to be exempt from further environmental review so why isn't that applicable so the removal of hazard trees is distinguishable from salvage harvest because with salvage any dead tree could be removed it doesn't prescribe a certain type of silvicultural prescription it could remove all or some of those within the 250 acre and the the purpose of salvage harvest is different than hazard tree removal the purpose of salvage harvest is to recover the economic value of those trees not to I mean this is all about what is going to have an impact on the environment that we should study further why does the purpose of the operation make any difference the prime there's two kind of separate questions the primary purpose is going to determine whether the activity falls within the categorical exclusion we have to look to the primary purpose to determine whether this is going to have a nexus with the road corridor and a nexus for the repair and maintenance for to fall within d4 or does it have some other purpose so let's let's for example use e10 which is hazardous fuels reduction if the thinning doesn't have a connection with hazardous fuels reduction it's not going to fall within that categorical exclusion so the primary purpose does matter but with the impacts are relative to the inquiry of is there going to be extraordinary circumstances in this case to fall within any of these categorical exclusions the agency has to determine that there's no extraordinary circumstances and there are resource conditions under subsection B that the agency is required to evaluate to determine whether there are impacts and are those impacts significant here the agency determined that the removal of these dead trees right next to an existing road that are not concentrated in a single area and in accordance with its hazard tree guidelines and its forest plan that activity is not going to present extraordinary circumstances it's not going to have significant impacts to the Pacific Fisher the California spotted owl the mountain yellow-legged frog and Earth Island on appeal does not challenge the forest surface as well well-reasoned determination with respect to extraordinary circumstances are you drawing a distinction between a salvage operation that could be conducted anywhere in the forest without regard to its proximity to forest roads which clearly addresses as my colleagues have pointed out salvage of fire damaged trees and removal of hazardous trees as part of road maintenance and safety of the traveling public there's there's a difference there because again the road maintenance there has to be a nexus to the road corridor and a nexus to repair maintenance and there's a qualitative constraint because those trees have to be hazardous trees whereas under the salvage categorical exclusion they don't have to be hazard they can be any dead tree and it may well be that the damaged tree still has commercial value if it can be cut before it's ruined from having stood in the forest for too long after being burned yes your honor the commercial aspect of this is really an implementation choice and the Forest Service has many implementation choices they can use a service contract they can use their own funding mechanism to to remove the hazardous trees I see I'm not I understand your argument but I want to ask you one more question it seems to me that what you try to do is you try to rely on a more general portion of a regulation giving broad discretion for the road maintenance and we're looking at under e13 for a specific provision as it relates to if you will the salvage of dead and dying trees so and with the Supreme Court has said in rad lax Gateway Hotel is that we rely on the specific over the general how do you respond to that at that point it would seem to me that we're really looking at e13 and not d4 as you ask us to look the the e13 is not a specific versus the general it's a different categorical exclusion and if we look at the Federal Register and promulgating e13 the Forest Service made clear that there may be overlapping categorical exclusions and in noted e10 as an example but this newly added CE adds to existing authority something quite general which looks at all road maintenance and we're saying this specifically about salvaging dead or dying trees and that's what's happening here and so that again I bring you back why is it I should look at this general authorization you've got under d4 when e13 seems specific to what we have here your honor I disagree that that this categorical exclusion is somehow more specific than then d4 they're just different you got any good legal authority for that argument there is the the categorical exclusions haven't been separated in that way they're just there's nothing to suggest that that some are more specific in that they subsume or you know limit other categorical exclusions isn't the answer to judge Smith's question that this is not a salvage operation exactly a different type of harvest exactly it's dealing with hazard trees versus salvage thank you your honor thank you for your argument there's some time for the Forest Service to carry out emergency activities without NEPA compliance so there was ever an emergency they have the authority to do that without relying on a wrong categorical exclusion but doesn't the Forest Service have to make the determination of how quickly these burn trees need to be removed if they happen to be located along the right-of-way of a forest service road but keep in mind your honor they took a year to plan this very adequate time to do an environmental analysis and the agency's own rules anticipates that to get salvaged timber before it goes bad for instance it's a it's fine to do it if under timber but I I don't know if it's in the record in this case or from my experience in handling of the timber cases but am I correct that that a tree has about a three-year usable lifespan after it's been burned in a wildland fire before it is no longer commercially viable I think it depends on the species but and it's a gradual yeah no no I realize sure three years it depends on how badly burned the tree is yeah yeah yeah but an environmental analysis is not like an environmental impact statement an environmental analysis can and usually is carried out in the span of a couple of months easily within the span that they chose to but if the project is really more safety and maintenance than it is sale of commercially salvageable timber why can't the agency make the determination that for safety reasons we need to move forward and there's no need to do an environmental impact statement because we're either going to take these trees now while they still have some value or we're just going to close the road well that wasn't the choice they could have done an environmental analysis and exactly the same amount of time and 40 CFR 1508.4 is the larger regulations governing all agencies and it says an agency can develop a categorical exclusion rule if it finds that the impacts of the action can be excluded the purpose is absolutely irrelevant it's the it's the impacts in this case from the logging equipment on the soils and from taking removing timber that some people including my plaintiffs think should be left for wildlife purposes. They were cutting the trees by hand and I mean we're not building access roads here like we normally would to a timber sale. No roads but there is the standard heavy machinery involved in the timber sale okay it's not just we're not talking about haul roads and that's not roads but machines going over lands that compact soils and everything else I'm out of time. We thank both sides for the argument the case of Earth Island Institute versus Elliot is submitted
judges: Tallman, Ikuta, N.R. Smith